## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

**EMPLOYERS AND OPERATING ENGINEERS
LOCAL 520 PENSION FUND, et al.,**

       **Plaintiffs,**

**v.**

**JPK EXCAVATING, INC.,**

       **Defendant.**            **CASE NO. 05-CV-268-DRH**

### MEMORANDUM AND ORDER

**HERNDON, District Judge**

### I.  INTRODUCTION

Plaintiffs Employers and Operating Engineers Local 520 Pension Fund filed their Complaint in this matter on April 14, 2005, stating a cause of action for payment of delinquent employee fund contribution payments and late fees from defendant JPK Excavating, Inc., pursuant to § 502(g)(2)[1] of the Employee Retirement

---

[1] (g) Attorney's fees and costs; awards in actions involving delinquent contributions
  (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
  (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of--
      (i)  interest on the unpaid contributions, or
      (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

Income Security Act ("ERISA"). **29 U.S.C. § 1132(g)(2).**  (Doc. 1.)

Defendant was served on April 20, 2005.  (Doc. 7.)  Defendant failed to enter its appearance or file any responsive pleadings.  On July 11, 2005, Plaintiffs filed a Motion for Entry of Default by Clerk.  (Doc. 10.)  The following day, the clerk made an entry of default against Defendant.  (Doc. 12.)  Plaintiffs also filed their Motion for Entry of Default Judgment and supporting memorandum with accompanying affidavits and exhibits, which is now before the Court.  (Docs. 8 & 9.)  Plaintiffs initially sought a default judgment against Defendant in the amount of $12,611.42 for amounts owed for the period of January, February, March and April, 2005.  (*See* Doc. 9-1, p.2.)  However, Plaintiffs have since filed a Supplemental Motion for Default Judgment and supporting memorandum with additional affidavit and exhibits (Docs. 12 & 13), seeking a default judgment in the total amount of $49,109.07 for the period of January through April, 2005, and June through August, 2005.[2]

Plaintiffs consist of several employee benefit funds and their representative fiduciaries, existing on behalf of members of the Operating Engineers Local Union No. 520 (the "Union").  (Doc. 1, ¶¶ 1-6.)  Defendant is an Illinois corporation that employed Union members.  (Doc. 1,  ¶ 7.)  The Union and Defendant entered into a collective bargaining agreement (the "Agreement").  Among

---

[2]  Plaintiffs also reserve the right, in their Supplemental Motion (Doc. 12), to subsequently pursue amounts owed for May, 2005, and amounts for the entire time period at issue that are discovered to be owed through an accounting of Defendant's books and records.

other things, the Defendant is required to (1) pay fringe benefit contributions for each hour of covered Union member work, (2) submit monthly report forms reflecting the hours worked and contributions owed, and (3) pay a 10% liquidated damages charge on all untimely benefit contribution payments.  (Doc. 9, p. 1-2 and Doc. 9-2 *Aff. of David Glastetter*, ¶¶ 3-5, Ex. 1 (Articles 34-37, 45 and Schedule A).)

Defendant submitted reports without payment for the months of January, February, and March, 2005.  (Doc. 9-2, ¶ 7.)  Defendant eventually paid the amount of contribution owed for these months, however, this payment was untimely made.  (*Id*.)  Defendant also submitted its report for April, 2005, but to date has failed to make its payment due.  (*Id*.)

Plaintiffs allege that Defendant owes liquidated damages for the untimely or failed payments of January through April, 2005, in the amount of $1,747.52.  (*Id*.; *see also* Doc. 9-2, Ex. 3.)  Additionally, Plaintiffs claim that the report Defendant submitted for April, 2005, showed Defendant owed $10,101.00 in contributions and dues.  (*Id*.)  Plaintiffs further allege that subsequent to their initial Motion for Default Judgment, Defendant submitted contribution reports without payment for the months of June through August, 2005.  (Doc. 13-1, p. 1.)  These reports illustrate that Defendant owes an additional "$33,179.68 in delinquent contributions and union dues for this period and an additional $3,317.97 in liquidated damages for the months of June, July and August, 2005, for a total of $36,397.65."  (*Id*.; *see also* Doc. 13-2 Supplemental Affidavit of David Glastetter, ¶ 5.)

Plaintiffs also claim that pursuant to the Agreement, Defendant is

3

required to pay Plaintiffs' attorneys' fees and costs if legal action is required to enforce the terms of the Agreement in regard to Defendant's contribution payments, submission of monthly reports, and payment of liquidated damages. (Doc. 9, p. 1-2 and Doc. 9-2, Ex. 1, Art. 45.)  Plaintiffs claim to have incurred a total of $762.90 in legal fees and costs in this matter. (Doc. 9, p. 2 and Doc. 9-7 *Aff. of Greg Campbell*.)  In sum, Plaintiffs pray for an order of default judgment against Defendant in the amount of $49,109.07. (Docs. 12 & 13.)

## II. ANALYSIS

### A. Determining the Proper Amount of Damages to Award Party Seeking a Default Judgment

A party is authorized to seek a default judgment pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 55**. Under this Rule, the Court may enter a judgment by default when the non-moving party has "failed to plead or otherwise defend" itself. **FED. R. CIV. PRO. 55.** "As a general rule, a 'default judgment establishe[s], as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint,'" as long as plaintiff's allegations are well-plead. ***Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 186 (7th Cir. 1982)).** Plaintiff (or the party moving for a default judgment), must then establish a right to the requested relief sought. ***In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).**

A party obtaining a default judgment in its favor is not entitled to an

award "exceed[ing] [the] amount [] prayed for in the demand for judgment." **FED. R. CIV. PRO. 54(c).** Allegations within the complaint regarding damages are not deemed true upon the rendering of a default judgment. *In re Catt*, **368 F.3d at 793 (citations omitted);** *Dundee Cement Co.*, **722 F.2d at 1323 (citations omitted).** Instead, the district court must determine with reasonable certainty the proper amount to award as damages to the prevailing party. *Id.* Such determination can be made either based upon an evidentiary hearing or from "definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, **722 F.2d at 1323 (citations omitted);** *see also In re Catt*, **368 F.3d at 793.**

## B.   Plaintiffs' Evidence Regarding Amount of Award Sought

Along with both the initial and supplemental Motion for Default Judgment, Plaintiffs have submitted several evidentiary items in order to prove the amount of damages they allege they are entitled to obtain from Defendant. Specifically, Plaintiffs have attached the following evidentiary items to their Motion:

| | |
|---|---|
| Item 1 | **Affidavit of David Glastetter ("Glastetter Aff.") with signature verification** |
| | **The affidavit has three exhibits attached as follows:** |
| | **Ex. 1   Copy of the Collective Bargaining Agreement (the "Agreement") between Plaintiffs and Defendant** |
| | **Ex. 2   Copy of the Signature Page of the Agreement** |
| | **Ex. 3   Spreadsheet entitled "JPK Excavating, Inc. Fringe Benefit Liability for the Period 01/05 Thru 04/05"** |
| Item 2 | **Affidavit of Greg A. Campbell ("Campbell Aff.") with signature verification** |

5

Similarly, the following evidentiary item is attached to Plaintiffs' Supplemental Motion:

**Item 1** **Supplemental Affidavit of David Glastetter ("Supp. Glastetter Aff.") with signature verification**

**The Supplemental Affidavit has the following two exhibits:**

**Ex. 4** **Defendant's Monthly Reports for June, July and August, 2005**

**Ex. 5** **Spreadsheet entitled "JPK Excavating, Inc. Fringe Benefit Liability for the Period 01/05 Thru 08/05"**

In examining the above-listed items, the Court notes the various evidentiary issues it has with the following items submitted by Plaintiffs to support their amount of damages claimed.[3]

### 1.   The Collective Bargaining Agreement

The Agreement (Docs. 9-3 & 9-4; otherwise labeled as Ex. 1 to Glastetter Aff.), was submitted by Plaintiffs for the purpose of demonstrating Defendant's obligation, among other things, to (1) remit contributions to the various Plaintiff funds for each hour of covered work at a rate specified within the Agreement, (2) file monthly reports reflecting the hours worked and contributions owed, and (3) pay 10% liquidated damages on delinquent contributions.  (*See* Glastetter Aff., ¶¶ 2-5 and Docs. 9-3 & 9-4.)  Perhaps the most troubling detail is that the Agreement does not appear to cover the months of January through April, 2005, and June through

---

[3]  The Court finds that the evidence submitted by Plaintiffs to prove the amount of attorneys' fees and costs in this case is acceptable.  (*See* Campbell Aff.)  However, as Plaintiffs are entitled to attorneys' fees under either ERISA or the Agreement, the Court cannot determine whether an award of attorneys' fees is proper at this time, as the validity of the Agreement (and hence, the applicability of ERISA and contractual obligation) has not yet been proven.

August, 2005, which are the time frames at issue in this case.

The cover page of the Agreement reads that it covers the period of August 1, 1999 through July 31, 2004.  The Preamble itself, found on page one of the Agreement, does not include a specific date on which the Agreement was entered into by the parties.[4]   Further, Plaintiffs state that Schedule A of the Agreement provides the amounts of contribution the Defendant is required to make to the various Plaintiff funds, pursuant to the Agreement.  (Glastetter Aff., ¶ 3.)  However, Schedule A does not list contribution amounts for the periods of January through April, 2005, or June through August, 2005, and therefore, does not seem applicable in this matter, as Plaintiffs are specifically requesting damages for amounts owed by Defendant for these time periods.  In sum, the Court is currently unable to determine that this Agreement governs the time period at issue in this case or that it properly entitles Plaintiffs to the damages sought.

## 2.   The Signature Page to the Agreement

Plaintiffs have also submitted a copy of the signature page to the Agreement.   (Doc. 9-5; otherwise labeled as Ex. 2 to Glastetter Aff.)   Certain evidentiary issues also exist with this item.  First, the signature page only shows the signature for Defendant and not a representative of the Union (Plaintiffs).  It is noted that oftentimes contracting parties will sign separate signature pages, however, the

---

[4]  The Court notes that many written agreements similarly do not actually state a specific start date in the preamble, and usually just refer to the signature date, etc.  However, in this case it would have proven useful to provide the Court with additional evidence regarding the term of the Agreement.

7

Court feels that Plaintiffs should have submitted signature pages showing representative signatures for *both* parties to verify the validity of the Agreement.

Further, the Defendant's signature date is shown as October 29, 2004, which is *after* the termination of the time period stated on cover page of Agreement. Therefore, the Court is lead to believe that either this item is the signature page to another version of the Agreement, or that the parties adopted the previous version of the Agreement by reference/incorporation for an subsequent renewed time period. This may be likely, however, the language of the signature page does not specify a further or renewed time period for which the Agreement shall be deemed in effect after its original expiration of July 31, 2004.[5]  As such, the signature page does not aid in proving that the Agreement is a valid contract giving rise to the damages claimed by Plaintiffs.

     **3.**     **Spreadsheet Showing Amounts Due by Defendant for January Through April, 2005**

Plaintiffs have submitted a spreadsheet to indicate the amount owed by Defendant in this matter for the time period of January through April, 2005.  (Doc. 9-6; otherwise labeled as Ex. 3 to Glastetter Aff.)  While this item may be enough

---

[5] The closest the language of the signature page comes to supporting the renewal theory is in paragraph 3 of the signature page, stating:

> 3.  That the parties hereto do hereby adopt all the provisions and terms of the attached contract as the contract between the parties with respect to all of the conditions, wages, and terms of said contract and also with respect to the inception and duration of said contract.

(Ex. 2 to Glastetter Aff.)
This language still fails to state a specific time period for which an adoption of the previous contract would be in effect.

documentary evidence in order to show amounts owed by Defendant, it does not seem to be the best evidence Plaintiffs could have offered up to prove the amount of damages claimed.  Plaintiffs have stated in their Motion for Default Judgment that Defendant submitted its monthly reports for January through April, 2005.  (*See* Glastetter Aff., ¶ 7.)  In their memorandum to their Supplemental Motion, Plaintiffs have also attached the actual reports submitted by Defendant for the months of June through August, 2005.  (Doc. 13-2 Supp. Glastetter Aff., Ex. 4.)  Therefore, unless Plaintiffs can show some valid reason otherwise, the monthly reports submitted by Defendant for all the months at issue should be included as supplements to the spreadsheet in order to verify the amounts owed, as claimed by Plaintiffs.

### III.  <u>CONCLUSION</u>

The Court concludes that Plaintiffs have failed to submit sufficient evidence to show that Defendant is bound by the Agreement or that the Agreement even entitles Plaintiffs to the damages sought in this matter.  Therefore, at this time Plaintiffs' Motion for Default Judgment and Supplemental Motion for Default Judgment are both hereby **DENIED WITHOUT PREJUDICE**, granting Plaintiffs leave to file an Amended Motion for Default Judgment, submitting additional evidence, including but not limited to:

(1)    Evidence to show that Defendant was bound by the Agreement for the time period at issue, from January through April, 2005, and June through August, 2005, including signature pages for both parties;

(2)    Evidence to show the contribution amounts Defendant is contractually

obligated to pay to Plaintiffs under the Agreement for January through April, 2005, and June through August, 2005, (as stated in Schedule A of the Agreement); and

(3)    Monthly reports submitted by Defendant to Plaintiffs for the months of January through April, 2005, and June through August, 2005.


**IT IS SO ORDERED.**

Signed this 19th day of September, 2005.




                                                    /s/            David RHerndon
                                    **United States District Judge**